Filed 5/6/22  In re J.D. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.D. et al., Persons Coming Under the Juvenile Court Law. | B314343 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> Veronica D., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. Nos. DK19673A, DK19673B |

APPEAL from orders of the Superior Court of Los Angeles County, Diane C. Reyes, Judge Pro Tempore of the Juvenile Court.  Conditionally affirmed and remanded with directions.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

Mother Veronica D. appeals from the juvenile court's orders terminating her parental rights to her children J.D. (born July 2014) and R.D. (born July 2016).  Mother contends the orders must be reversed because the Los Angeles County Department of Children and Family Services (Department) failed to comply with its duty of initial inquiry under state law (Welf. & Inst. Code, § 224 et seq.) implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) when it did not ask extended family members if the children had Indian ancestry.[1] We agree with mother that section 224.2, subdivision (b) (section 224.2(b)) required the Department to interview identified and available maternal extended family members.  It did not. Accordingly, we conditionally affirm the orders terminating mother's and father's parental rights and remand the matter for the limited purpose of requiring the Department to comply with section 224.2 and, if necessary, the notice provisions of ICWA and related California law.

## BACKGROUND

1. ***Proceedings leading to termination of parental rights***

The Department became involved with the family in September 2016 when it responded to an allegation that J.D.'s and R.D.'s father had sexually abused then-two-year-old J.D., and that then-two-month-old R.D. was at risk of abuse.  At the time, another dependency case was pending against father concerning his alleged sexual abuse of his daughter—J.D.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.  Because ICWA uses the term "Indian," we do the same for consistency.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

and R.D.'s half-sister.[2]  Parents also reportedly had a domestic violence encounter in July 2016.  The Department obtained a removal order and detained the children from father.

The Department filed a section 300 petition, and in February 2017 the juvenile court sustained allegations that J.D. and R.D. were at substantial risk of serious physical harm due to parents' history of domestic violence; father's history of and current illicit drug use and mother's failure to protect the children; father's mental and emotional problems; and father's criminal history and registration as a sex offender.[3]  The court declared the children dependents of the juvenile court, removed them from father, awarded father monitored visits (but not by mother), and released the children to mother's custody under Department supervision with family maintenance services. Mother was to participate in individual counseling, parenting classes, and a sexual abuse awareness program.

In January 2018, mother and father had a third child, A.D.  The Department received reports alleging general neglect by parents after A.D.'s birth and again in March 2018.  A.D. also was detained from father.

---

[2]     Another child of father's, by a different mother, was declared a juvenile dependent in 2013 and released to the child's maternal grandparents under a legal guardianship in 2015.

[3]     Father is not a party to this appeal.  At the detention hearing, the court found he was J.D.'s and R.D.'s presumed father.  Mother met father, who was then 33 years old, after she moved in with a friend and the friend's family at the age of 16. She gave birth to their first son J.D. at age 17; she and father married about a year and a half later in 2016.

In May 2018, the Department detained J.D. and R.D., as well as A.D., from mother,[4] and filed a supplemental section 387 dependency petition on J.D.'s and R.D.'s behalf,[5] alleging mother had violated the juvenile court's earlier orders by allowing father unmonitored contact with the children. In July 2018, the court sustained the petition and ordered J.D. and R.D. removed from mother with family reunification services to be provided to her, but not to father. Mother was to have monitored visits and to participate in programs for parenting and domestic violence for victims, sexual abuse awareness counseling, and individual counseling.

At the six-month review hearing in January 2019, the court awarded mother another six months of reunification services to give her time to enroll in and complete her court-ordered programs, as the Department had recommended.

In June 2019, mother gave birth to a fourth child with father (while she was in custody). The baby (E.D.) was detained and placed in foster care.[6] J.D., R.D., and their brother A.D., remained together in the foster home where they had been placed in February 2019.

In August 2019, the court found mother, who had received 12 months of reunification services, had not made substantial

[4] The children were placed in foster care.

[5] In March 2018, the Department filed a separate dependency petition on behalf of A.D., followed by an amended petition in June 2018. The court appears to have partially sustained the amended petition on July 20, 2018.

[6] The Department filed a dependency petition on E.D.'s behalf that the court sustained on August 7, 2019.

4

progress toward alleviating or mitigating the causes that led to the children's placement. It terminated her reunification services and set the case for a section 366.26 permanency planning hearing. In February 2020, the court ordered adoption as the children's permanent plan.

On August 5, 2021, the court convened a combined section 388 and section 366.26 hearing.[7] The court denied mother's earlier-filed section 388 petition asking for further reunification services and unmonitored visits. The court then found J.D. and R.D. were adoptable by clear and convincing evidence and no exception to adoption applied, terminated mother's and father's parental rights, and designated the children's current caretakers as their prospective adoptive parents. Mother appealed from the orders terminating her parental rights as to J.D. and R.D.[8]

## 2.    *Facts relevant to ICWA inquiry*

When the Department initiated its investigation in September 2016, mother—who recently had left father—was temporarily living with the children at maternal grandmother's home. (Mother's father, maternal grandfather, died when mother was two years old.) A Department social worker interviewed maternal grandmother, but the record does not indicate the social worker asked maternal grandmother about the children's

---

[7]    The court had to continue the permanency planning review hearings several times due to the COVID-19 pandemic and for the Department to give proper notice.

[8]    At that same August 5, 2021 hearing, the juvenile court also terminated mother's and father's parental rights as to A.D. and E.D. Mother's appeal from those orders currently is pending under appellate case number B314404.

5

possible Indian ancestry.  Two days later, the social worker interviewed mother, who denied having American Indian ancestry.  The detention report states both parents denied any American Indian ancestry, and ICWA does not apply.

On September 28, 2016, mother and father each filled out a Parental Notification of Indian Status form (ICWA-020), and each checked the box, "I have no Indian ancestry as far as I know."  At the detention hearing that same day, the juvenile court noted parents had filled out the ICWA-020 forms indicating "no known Indian ancestry," and declared it had "no reason to know" the children were Indian children under ICWA.

The Department's jurisdiction/disposition report prepared October 26, 2016, states, "There is no known American Indian ancestry based upon inquiries" by the dependency investigator.  According to the report, on October 19, 2016, mother again said she did not have any Indian ancestry.  Father apparently denied any American Indian ancestry on September 9, 2016, to the social worker in the children's half-sibling's case.  The report notes the investigator also interviewed maternal grandmother on October 19, 2016, at "mother's residence,"[9] but does not state the investigator asked her about Indian ancestry.  (Maternal grandmother was monitoring father's visits with the children.)

According to subsequent reports filed with the court, the Department spoke with maternal grandmother on several more

---

[9]     Based on the address provided in the report, mother still was living with maternal grandmother at this point.  At some point, mother moved out of maternal grandmother's home.  The Department's August 15, 2017 status review report states mother and the children were residing at a motel, and notes maternal grandmother said she never told mother to move out.

6

occasions—both before and after the children were removed from mother—including in July 2017, March 2018,[10] June 2018, December 2018, and August 2019. She visited the children with mother and, at one point, was seeking to have the children placed in her care. Maternal grandmother also received notice of the scheduled section 366.26 hearings. There is no indication that the Department asked maternal grandmother about the children's possible Indian ancestry during any of its encounters with her.

The Department had contact with maternal great aunt in April, May, and June 2018 about an April 2018 visit parents and the children made to her house, and whether she would be willing to have the children placed with her. In June 2018, maternal great aunt told the Department social worker she was willing to provide a home for the children.[11] There is no indication that the Department asked the maternal great aunt about the children's possible Indian ancestry during any of its contacts with her.

According to Department reports, on March 21, 2018 and June 5, 2018, the juvenile court found that it did "not have a reason to know that ICWA applies" to mother and father, respectively.

---

[10]    During that interview, maternal grandmother informed the social worker she temporarily was living with mother and the children.

[11]    The Department's June 14, 2018 jurisdiction/disposition report notes the dependency investigator also interviewed maternal second cousin—presumably, maternal great aunt's daughter, with whom she lived.

7

At the January 22, 2021 section 366.26 hearing, the court asked mother if she had any American Indian ancestry as far as she knew. Mother responded, "No." The court ordered, "[T]he prior no-ICWA finding as to mother remains." In response to questioning, mother also said she was not aware of father having any American Indian ancestry. The court then found its prior finding "of no reason to know ICWA applies" remained.

## DISCUSSION

### 1. *Applicable law and standard of review*

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*); see 25 U.S.C. § 1902.) Both ICWA and state law define an " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*Benjamin M., supra*, 70 Cal.App.5th at p. 741.) Federal regulations implementing ICWA require *courts* to ask participants in a dependency case whether they know or have reason to know the child is an Indian child and to instruct

8

the parties to inform the court " 'if they subsequently receive information that provides reason to know the child is an Indian child.' " (*Ibid.*)

California law, however, "more broadly imposes" on the Department and the juvenile court, "(but not parents)[,] an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is[,] or may be[,] an Indian child.' " (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741–742, quoting § 224.2, subd. (a).) That duty to inquire "begins with [the] initial contact . . . and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th 275, 290, citing § 224.2, subd. (a).)

Under the statute, when the Department takes a child into its temporary custody, its duty of initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2(b); *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742; see also *In re Darian R.* (2022) 75 Cal.App.5th 502, 507 (*Darian R.*).)[12] The juvenile court, in turn, at a party's first appearance, must ask "each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and require each

---

[12] Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting federal definition].)

9

party to complete an ICWA-020 form (Cal. Rules of Court, rule 5.481(a)(2)(C)). "The parties are instructed to inform the court 'if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2020); § 224.2, subd. (c).)" (*In re Dominic F.* (2020) 55 Cal.App.5th 558, 566 (*Dominic F.*).)

If that initial inquiry gives the juvenile court or Department a "reason to believe that an Indian child is involved," then their duty to "make further inquiry regarding the possible Indian status of the child" is triggered. (§ 224.2, subd. (e); *Benjamin M., supra*, 70 Cal.App.5th at p. 742.) And, once there is a "reason to know" an Indian child is involved, formal notice under ICWA must be given to the children's "parents or legal guardian, Indian custodian, if any, and the child's tribe." (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1); 25 U.S.C. § 1912(a).)[13]

We review the juvenile court's ICWA findings for substantial evidence, but independently determine whether the requirements of ICWA have been satisfied when the facts are undisputed. (*Dominic F., supra,* 55 Cal.App.5th at p. 565; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

## 2. *The Department failed to conduct an adequate inquiry under section 224.2(b)*

It is undisputed the Department did not ask maternal grandmother or maternal great aunt about the children's possible Indian ancestry despite having repeated opportunities to do so.

---

[13] As mother contends only that the Department failed to discharge its duty of initial inquiry, neither the duty of further inquiry nor notice requirements are at issue.

10

The Department argues "there was no need to question [parents'] extended family members about the children's Indian status" because mother and father were available to answer questions about their Indian ancestry. It thus asserts it fulfilled its duty of initial inquiry.[14]

We disagree. Maternal grandmother was known and available to the Department. Indeed, it spoke with her at least six times. It also had several contacts with maternal great aunt. All it had to do was ask these two women about any Indian ancestry. But it didn't. (See *In re A.C.* (2022) 75 Cal.App.5th 1009, 1013, 1015–1016 [Department did not comply with its " 'obligation to make a meaningful effort' " to ask extended family members—who "were readily available to consult"—about child's possible Indian ancestry, despite parents' denial of any, noting mother was "the product of foster care"]; *Darian R.*, *supra*, 75 Cal.App.5th at pp. 505, 509–510 [mother, who denied Indian ancestry, demonstrated Department erred in failing to ask aunt and grandfather, with whom the Department had contact, about children's potential Indian ancestry, but error was harmless]; *In re H.V.* (2022) 75 Cal.App.5th 433, 436, 438 [Department failed to discharge its "first-step inquiry duty," even though mother denied Indian ancestry, when it did not ask extended family members—whom it had interviewed—about child's possible Indian ancestry].) We thus agree with mother that the Department did not fulfill its initial duty of inquiry.

---

[14] Although mother argues the Department's error was prejudicial, the Department does not contend that any inquiry error on its part was harmless. Rather, it contends only that it satisfied its duty of inquiry, and that substantial evidence supports the court's finding that ICWA does not apply.

11

In light of that conclusion, we also must reject the Department's contention that parents' denials of Indian ancestry provide substantial evidence supporting the juvenile court's finding that ICWA did not apply. (See *In re Josiah T.* (2021) 71 Cal.App.5th 388, 397–401, 408 [some indication of Cherokee and Choctaw heritage; juvenile court "may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [Department] inquiry that is not proper, adequate, or demonstrative of due diligence"]; see also *In re N.G.* (2018) 27 Cal.App.5th 474, 484 [in absence of appellate record "affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that . . . ICWA did not apply"].)

We acknowledge that remanding the matter to comply with ICWA will delay the children's permanent plan of adoption. We are mindful that this case has been pending for more than five years. Nevertheless, our high court has explained that the federal and state statutes implementing ICWA "were clearly written to protect the integrity and stability of Indian tribes despite the potential for delay in placing a child." (*Isaiah W., supra*, 1 Cal.5th at p. 12.) And, as the Department easily can contact maternal relatives, any delay here should be minimal.[15]

---

[15] Mother identifies no relatives—maternal or paternal—other than maternal grandmother and maternal great aunt as extended family members the Department must question under section 224.2(b). On remand, the Department thus may limit its initial inquiry of extended family members to maternal grandmother and maternal great aunt.

## DISPOSITION

We conditionally affirm the court's orders terminating mother's and father's parental rights to J.D. and R.D.  The case is remanded to the juvenile court to order the Department immediately to comply with the inquiry provisions of Welfare and Institutions Code section 224.2, consistent with this opinion, and update the court on its investigation within 30 days of the remittitur.  After ensuring the Department has complied with the inquiry—and, if applicable, notice—provisions of ICWA and related California law, the juvenile court shall determine whether ICWA applies.  If the court determines ICWA does not apply, the orders terminating mother's and father's parental rights shall remain in effect.  If the court determines ICWA does apply, it shall vacate its orders terminating parental rights and proceed in conformity with ICWA and related state law.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



LAVIN, Acting P. J.                    KALRA, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13